IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 11, 2010 Session

## CALVIN BENN v. PUBLIC BUILDING AUTHORITY OF KNOX COUNTY, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-278-08      Dale Workman, Judge**

_____

**No. E2009-01083-COA-R3-CV - FILED JUNE 28, 2010**

_____

Plaintiff slipped off the sidewalk while removing trash during the course and scope of his employment with Knox County. Plaintiff sustained injuries to his hip and shoulder as a result of his fall. He then filed suit pursuant to the Government Tort Liability Act. After a bench trial, the trial court found that Plaintiff failed to prove constructive notice by a preponderance of the evidence and entered a judgment in favor of Defendants. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Brent R. Watson and Louis Andrew McElroy, Knoxville, Tennessee, for the appellant, Calvin Benn.

William S. Lockett, Jr. and Daniel A. Sanders, Knoxville, Tennessee, for the appellee, Knox County.

### OPINION

### I.  FACTUAL BACKGROUND

This is a slip and fall case. Calvin Benn slipped and fell at the Old Sears Building, located at 1000 North Central Street, Knoxville, Tennessee ("the Premises"). Mr. Benn was employed by Knox County Schools, and he worked on the Premises. Knox County owns the Premises but contracts with the Public Building Authority ("PBA") for its maintenance and

day-to-day operations.

On the morning of December 16, 2005, Mr. Benn arrived at work and noticed that he needed to take out the garbage. He exited the Premises to take the garbage to the dumpster, which he did often as part of his regular job duties. When Mr. Benn stepped off the curb, his feet slipped out from underneath him and he fell off the curb, injuring his hip and shoulder. He claims that an accumulation of ice on the sidewalk caused his injuries and that PBA was liable because they allowed the ice to accumulate on the Premises.

Dr. Stewart treated Mr. Benn immediately after the fall. Mr. Benn had a cut on his head, a fractured left hip, and damage to his left shoulder. Dr. Stewart treated the hip and the cut on his head. Dr. Paul Naylor, a board-certified orthopedic surgeon licensed in Tennessee, treated Mr. Benn's injured shoulder because Dr. Naylor was already treating him for previous injuries to that shoulder. Prior to this incident, Mr. Benn suffered a work-related injury for which he received worker's compensation benefits. After the fall, Mr. Benn had shoulder replacement surgery that was also covered by worker's compensation benefits. Mr. Benn continued in his employment with Knox County Schools until he was terminated for having an altercation with another employee.

On December 13, 2006, Mr. Benn filed a Complaint against PBA and the City of Knoxville pursuant to the Governmental Tort Liability Act to recover damages for his lost earning capacity, pain and suffering, and medical expenses. A bench trial occurred on March 17, 2009. Mr. Benn was the only witness called. PBA offered the depositions of Dr. Naylor and Dr. William David Hovis, a board-certified physician licensed in Tennessee that specializes in orthopedic surgery.

At trial, Mr Benn testified that after the fall, he realized that he slipped on a patch of ice that was two or three feet in diameter. He went back to the place of his fall later that day to investigate the source of the ice and thought that it was "a drain-off or a water runoff that had frozen up." He believed that the heating/air conditioning leaked, causing the drain-off. Mr. Benn also produced photographs as trial exhibits that showed liquid stains on the air conditioning drain pipe, the dumpster, and the concrete pathway located on the Premises.

After reviewing the evidence, the trial court found that the Mr. Benn failed to prove that PBA knew or should have known of the ice on the sidewalk by a preponderance of the evidence. Thus, the trial court determined that PBA was not negligent. However, the trial court noted that if it had found liability on the part of PBA,"the amount of the damage to be recoverable by Mr. Benn. . .he would be entitled to recover $180,000[.]" Consequently, Mr. Benn filed this appeal, challenging the trial court's findings.

## II. ISSUES PRESENTED

Mr. Benn raises the following issue for review, which we restate:

1. Whether the trial court erred in finding that PBA did not have constructive notice of the dangerous condition that caused Mr. Benn's fall.

PBA raises two additional issues for review, which we also restate:

2. Whether the trial court erred in failing to dismiss the case on the grounds of sovereign immunity.

3. Whether the trial court abused its discretion in denying PBA's motion to amend its answer to conform to proof of comparative fault.

## III. STANDARD OF REVIEW

Our standard of review of a trial court sitting without a jury is de novo upon the record. *Thompson v. Memphis Light, Gas, and Water Div.*, 244 S.W.3d 815, 820 (Tenn. Ct. App. 2007) (citing *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995)). There is a presumption of correctness accorded to the trial court's findings of fact, unless the preponderance of the evidence indicates otherwise. *Id.*; *see also* Tenn. R. App. P. 13(d). We review de novo with no presumption of correctness the trial court's conclusions of law and mixed questions of law and fact. *Thompson*, 244 S.W.3d at 820; *see also* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV. DISCUSSION

### A.

The Tennessee Governmental Tort Liability Act ("GTLA"), codified in Tenn. Code Ann. § 29-20-101, et seq., generally grants the government immunity from suit when engaged in government functions unless a statutory exception removes immunity. *Halliburton v. Town of Halls*, 295 S.W.3d 636, 639 (Tenn. Ct. App. 2008). The relevant provisions, at Tenn. Code Ann. § 29-20-204, provide:

(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such government entity[;]

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

Tenn. Code Ann. § 29-20-204 (2000). This section codifies the common law duty of care of owners and occupiers of property. *See Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002).

In premises liability cases against a governmental entity, a plaintiff must prove: (1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached its duty to eliminate the condition or its duty to warn of the condition. *See Sears v. Metro. Nashville Airport Auth.*, No. 01A01-9703-CV-00138, 1999 WL 536341, at *5 (Tenn. Ct. App. M.S., July 27, 1999); *Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996); *see also* Tenn. Code. Ann. § 29-20-203(2000)[1] and § 29-20-204.

To prevail at trial, a plaintiff must first establish that there was a "dangerous or defective condition of any public building or structure, or other public improvement" owned and controlled by a governmental entity. *See* Tenn. Code Ann. § 29-20-204(a). Whether a particular location is defective, dangerous, or unsafe is a question of fact, which this court reviews with a presumption of correctness. *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn. 1996).

In the instant case, the trial court found that a dangerous condition existed at the time of Mr. Benn's fall. We find nothing in the record to preponderate against this finding. After establishing the existence of a dangerous condition, Mr. Benn then had to prove that PBA had actual or constructive knowledge of the dangerous condition. *See* Tenn. Code Ann § 29-

---

[1] Tenn. Code Ann. § 29-20-203. Removal of immunity for injury from unsafe streets and highways – Notice Required.

(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

20-204(b).

Therefore, this appeal hinges on whether PBA had constructive notice. "Constructive notice" is defined as "'information or knowledge of a fact imputed by law to a person (although he [or she] may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997), quoting *Kirby v. Macon County*, 892 S.W.2d 403, 409 (Tenn. 1994). A plaintiff can establish constructive notice in one of three ways. First, a plaintiff may demonstrate that the owner or operator of the premises caused or created the condition. *See Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). Second, if a third party caused or created the dangerous condition, a plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition." *Elkins v. Hawkins County*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at *4 (Tenn. Ct. App. E.S., May 19, 2005). Third, a plaintiff may show constructive notice by proving that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous condition. *Blair v. West Town Mall*, 130 S.W.3d 761, 765-66 (Tenn. 2004). This is commonly called the "common occurrence" theory. All three methods of proving constructive notice are related to a defendant's superior knowledge of the premises, which is the basis for liability. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980).

Mr. Benn reliance on *Elkins* as authority for the "caused or created" theory is misplaced. In *Elkins*, a plaintiff sued the county after she slipped and fell on the threshold leading to the women's restroom. *Elkins*, 2005 WL 1183150, at *1. The plaintiff claimed that the county was negligent in failing to correct the dangerous condition that was created by a combination of a dimly lit hallway and a threshold that was too high. *Id*. at *3. The trial court determined that the combination of the dim light and high threshold was enough to conclude that the county had constructive notice. *Id*. Finding that the county was responsible for the dangerous condition, the trial court entered a judgment in favor of the plaintiff. *Id*. On appeal, the county challenged the trial court's findings that the county had constructive notice of the dangerous condition. *Id*. In affirming the trial court's determination, this court concluded that the county caused and created the dangerous condition because it "constructed the threshold and installed the light fixture" that led to the plaintiff's failure to see clearly the threshold, causing her to fall and break her hip. *Id*. at *6. This court rejected the county's argument that it did not have notice of the condition and observed:

> When a governmental entity "construct[s] the offending instrumentality [the entity] must be charged with notice of its condition as constructed."

*Id.* (citing *Sanders*, 783 S.W.2d at 952).

Here, it is inappropriate to apply the "caused or created" theory of constructive notice to the facts of this case. There is no indication in the record that PBA took any affirmative steps to render the Premises unsafe. In fact, the record is silent regarding any updates or modifications PBA made to the Premises, possibly rendering it unsafe. Without any proof that PBA took affirmative action to render the Premises unsafe, this theory is inapplicable to this case. Mr. Benn's own testimony does not suggest that PBA caused or created a dangerous condition on the Premises. As such, Mr. Benn cannot rely on the "caused or created" theory of constructive notice.

The second theory of proving constructive notice, the "passage of time" theory, requires a plaintiff to prove that the dangerous condition existed for such a length of time that the governmental entity, in the exercise of due care, should have discovered the condition. *Lindgren*, 88 S.W.3d at 584-85. However, in these cases, the plaintiff does not have to prove that the defendant caused or created the dangerous condition. *Id*. In *Lindgren*, this court found that there was constructive notice of the dangerous condition after dirt and debris were allowed to accumulate for a substantial period of time around a sewer cover. *Id*. at 585.

The trial court in the case at bar found that Mr. Benn's description of the patch of ice indicated that no one else would have known that the ice was there. Mr. Benn failed to show that the ice existed for such a length of time that PBA should have known of its existence. Under Mr. Benn's theory of liability, the water froze to create the ice that caused his fall. Nevertheless, to illustrate constructive notice under this theory, Mr. Benn would have to establish that the dangerous condition – the ice patch – existed long enough that PBA should have known of its existence. *See id.* at 584-85.

At trial, Mr. Benn testified that he did not see any ice walking from his car to the Premises. He had never seen ice in that location before the day of his accident. Even the weather reports introduced at trial indicated that the air temperature was slightly above freezing just prior to Mr. Benn arriving at work on the morning of the accident. His testimony demonstrated that the water stains coming from the dumpster and from the heating/air conditioning unit were present for a long time, but he never observed any accumulation of water in the area where he slipped. Our review of the record uncovers no evidence to suggest that an accumulation of water became ice for a sufficient period of time to trigger PBA's awareness of it.

Finally, under the common occurrence theory of constructive notice, a dangerous condition occurs so often that the owner of the premises should know of the condition and

take all reasonable action to remedy the situation. *See Blair*, 130 S.W.3d at 766.

The trial court in this case relied heavily on *Blair v. West Town Mall* in determining that PBA did not have constructive notice of the dangerous condition. In that case, a plaintiff sued West Town Mall after she slipped and fell on a slippery oil spot as she was leaving the mall. 130 S.W.3d at 762. She claimed that the defendant failed to inspect the parking lot and should have known of the slick oil spots because of how often city buses stopped at the place where she fell. *Id*. at 762-63. In *Blair*, the Tennessee Supreme Court formally adopted the common occurrence theory as a method of proving constructive notice. *Id*. at 765-66. The Court held that a plaintiff can establish constructive notice by showing that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous or defective condition. *Id*. at 766.[2] A plaintiff, when using this method of proving constructive notice, is not required to demonstrate the duration of the dangerous condition, which can be difficult. *Id*. The question becomes whether the condition occurs often enough that the owner is put on constructive notice of its existence. *Id*.

In addition to *Blair*, Mr. Benn also cites *Barrett v. Red Food Stores, Inc*., as authority that he has proven constructive notice under the common occurrence theory. In *Barrett*, a plaintiff sued the defendant after she sustained injuries when she slipped on water that dripped from ice cream containers as they were being loaded into the display case in the freezer section of the grocery store. *Barrett v. Red Food Stores*, No. 01-A-019108CV00302, 1992 WL 33891, at *1 (Tenn. Ct. App. M.S., Feb. 26, 1992). This court found that ice cream deliveries were a regular occurrence at the grocery store, and as a result, the water spilling from the ice cream as it was being placed into the freezer was also a common occurrence. *Id*. at *4. The store had constructive notice of the dangerous condition because of the recurring incident of water spilling on the floor during ice cream deliveries. *Id*. at *5.

The facts of *Barrett* are distinguishable from the case at bar. Unlike *Barrett*, where the plaintiff demonstrated a pattern of ice cream deliveries led to recurring water spilling, Mr. Benn testified that he had worked on the Premises for several years and never noticed ice form in the area of his fall. *See id*. He also testified that he never heard of anyone else

---

[2] The Tennessee Supreme Court reached it decision after firmly rejecting the "method of operation" theory of premises liability and observed:

> Method of operation is not a useful title for this theory. The term method of operation suggests that the owner's method of operation, or way of doing business is part of the inquiry. But under the theory we now adopt, the owner's way of doing business is not determinative.

*Blair*, 130 S.W.3d at 766.

slipping in that area prior to his accident.  Therefore, Mr. Benn's own testimony illustrates that the presence of ice was not a common occurrence for which PBA would have constructive notice.

After reviewing the record, we find Mr. Benn failed to satisfy his burden of proof. The trial court properly entered a judgment in favor of PBA.  We conclude that Mr. Benn failed to establish by a preponderance of the evidence that PBA had constructive notice of the dangerous condition.  Accordingly, we affirm.

We decline to address the issues raised by PBA.  We have addressed the dispositive issue of this appeal.

## V.  CONCLUSION

The judgment of the trial court is affirmed in its entirety.  Cost on appeal are taxed against appellant, Calvin Benn.  This cause is remanded to the trial court for the collection of costs.


_____
JOHN W. McCLARTY, JUDGE

-8-