IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2023 Session

## BLAKELE BAKKER, M.D. v. CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY D/B/A ERLANGER HEALTH SYSTEM

Appeal from the Circuit Court for Hamilton County
No. 19C638        W. Jeffrey Hollingsworth, Judge

_____

No. E2022-00872-COA-R3-CV

_____

The trial court granted summary judgment in favor of the defendant hospital in this premises liability case, finding that the defendant had no notice of the alleged dangerous or defective condition on its premises. The plaintiff has appealed. Following our review, we determine that the plaintiff was not provided notice and a reasonable opportunity to respond to all issues to be considered by the trial court at the summary judgment stage. Accordingly, we vacate the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

G. Brent Burks and Kathleen M. Reed, Chattanooga, Tennessee, for the appellant, Blakele Bakker, M.D.

Daniel M. Stefaniuk and Christopher R. Ramsey, Chattanooga, Tennessee, for the appellee, Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System.

## OPINION

### I. Factual and Procedural Background

On May 30, 2019, the plaintiff, Blakele Bakker, M.D., filed a premises liability action against the defendant, Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger"), in the Hamilton County Circuit Court ("trial

court"). Dr. Bakker stated that on January 3, 2019, she was employed as a resident physician providing medical services at Erlanger when she had occasion to treat a patient in "High Risk Perinatal Room 20." Dr. Bakker alleged that the patient in Room 20 was "hooked up to a sequential compression device causing the cords to pool at the foot of the bed, creating a dangerous pathway for use by ordinary and prudent persons."[1] According to Dr. Bakker, when she attempted to exit the room while exercising reasonable care, her feet became tangled in the cords or tubes and she fell, suffering severe injury to her right ankle.

Dr. Bakker averred that Erlanger was aware of the unreasonably dangerous condition created by the sequential compression device cords and tubing and that Erlanger had taken no steps to cure or warn of this dangerous condition. Dr. Bakker therefore alleged that Erlanger was negligent and had caused Dr. Bakker to suffer injuries and damages, including pain, suffering, and loss of earnings. Dr. Bakker sought compensatory damages in the amount of $300,000 from Erlanger.

On June 19, 2019, Dr. Bakker filed an amended complaint, adding the assertion that quasi-governmental immunity should be removed pursuant to the provisions of the Tennessee Governmental Tort Liability Act ("GTLA"), specifically Tennessee Code Annotated §§ 29-20-203 and -204, because Erlanger owned and controlled the premises whereupon the dangerous condition existed. Erlanger filed an answer on July 31, 2019, acknowledging that it was a "public nonprofit corporation and governmental hospital authority." Erlanger denied that any negligence occurred, that a dangerous condition existed, or that it had caused Dr. Bakker's injuries. Erlanger also asserted that because it was a governmental entity, as defined in Tennessee Code Annotated § 29-20-102, it was entitled to all privileges, immunities, and defenses set forth therein. Erlanger further asserted that Dr. Bakker was more than fifty percent at fault for her injuries and that Erlanger had neither actual nor constructive notice of the alleged dangerous or defective condition.

On January 14, 2021, Erlanger filed a motion seeking the trial court's permission to file documents under seal. Erlanger stated that it intended to file a summary judgment motion, which could contain information that might be construed as protected health information of the patient, who was not a party. Erlanger thus sought to file the summary judgment motion and any related or responsive documents under seal. On January 26, 2021, the trial court entered a protective order allowing such documents to be filed under seal in order to protect the patient's privacy.

---

[1] The record demonstrates that sequential compression devices are used in order to prevent blood clots from forming in the patients' legs. These devices often require the use of both electrical cords and pneumatic tubing.

On February 8, 2021, Erlanger filed a motion for summary judgment and accompanying memorandum under seal. Erlanger concomitantly filed a statement of undisputed material facts, also under seal. In its motion, Erlanger asserted that Dr. Bakker could not establish that a dangerous condition existed on the property controlled by Erlanger so as to remove governmental immunity. Erlanger contended that during her deposition, Dr. Bakker was unable to identify exactly what caused her fall and could not remember seeing the cords or tubes on the floor. Instead, according to Erlanger, Dr. Bakker merely speculated that the patient had pneumatic tubes connected to a sequential compression device that may have caused Dr. Bakker's fall. Erlanger further argued that because Dr. Bakker had walked around the foot of the patient's bed to access her monitor before again traversing that area to leave the room, Dr. Bakker was at least fifty percent at fault for failing to exercise due care.

On February 14, 2022, Dr. Bakker filed a response in opposition to the motion for summary judgment, as well as a statement of disputed material facts and a response to Erlanger's statement of undisputed material facts. Dr. Bakker claimed that although she had walked around the foot of the patient's bed to access her monitor and would have necessarily navigated around the pneumatic tubing when doing so, she did not see the tubes until after her fall because she was focused on the patient. However, Dr. Bakker acknowledged that she was aware that the patient was using a sequential compression device. Dr. Bakker further stated that "[a]ny uncertainty as to the cause of the fall was meant as to the moment of the fall only" because she "realized in the moments after that her foot wrapped in the pneumatic tubing causing the fall."

The trial court conducted a hearing concerning the pending summary judgment motion on March 14, 2022. On May 25, 2022, the trial court entered a "Memorandum Order" granting summary judgment in favor of Erlanger. In its order, the trial court stated in pertinent part:

> In its motion, Erlanger cites numerous passages from Dr. Bakker's deposition in which she says she does not know what caused her to fall. She states that she assumed that her foot got tangled in the cords, but she was not certain that that was what happened. Erlanger argues that speculation cannot be the basis for an issue of fact that would defeat a motion for summary judgment.
>
> However, in that same deposition, Dr. Bakker, stated starting on page 50, line 23
>
> "So I stepped into the pneumatic cords that were looped between the foot of the bed and the wall . . . ."

- 3 -

"So I stepped into the looped cords that were on the floor and fell down."

Although the testimony in which Dr. Bakker says she does not know why she fell and the testimony quoted above seems to conflict, it would be up to the jury to decide which version they believe.

However, another essential element of a slip and fall case is notice. The plaintiff must prove that Erlanger had actual or constructive notice of the allegedly dangerous condition that caused the fall. Dr. Bakker has not submitted sufficient admissible evidence to create a factual issue on that element.

There is no evidence in the record that Erlanger had actual or constructive knowledge that the pneumatic tubes or electrical cords in Room 20 of the Perinatal Unit created a dangerous condition on January 3, 2019. In her response, Dr. Bakker submits her own testimony about tubes and cords at Erlanger, but none of that testimony deals with Room 20 of the Perinatal Unit. Neither is any of the testimony on the notice issue admissible.

Rule 56.06 of the Rules of Civil Procedure states:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence . . ."

In her response, Dr. Bakker, attaches, as Exhibit A, excerpts from her deposition. On page 110 of her deposition, she relates a conversation in which a nurse named Linda Rogers told her about a fall Ms. Rogers suffered after tripping over a cord. That is hearsay and not admissible evidence.

On page 111, Dr. Bakker relates stories told to her by other unidentified nurses of cords not properly stored in ORs. Again this is hearsay testimony and is not related, in any way, to Room 20 on January 3, 2019.

On page 112, she admits that when she saw cords in what she considered an inappropriate place, she did not report the situation to anyone.

- 4 -

On page 114, she relates statements by unidentified persons that more attention was paid to cords to prevent another accident like Dr. Bakker's.

In short, there is no evidence that Erlanger had notice of a dangerous condition in Room 20 of the Perinatal Unit on or before January 3, 2019.

Therefore, summary judgment is **Granted** and all claims asserted by Dr. Bakker against Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System are Dismissed with prejudice.

On June 3, 2022, Dr. Bakker filed a motion, pursuant to Tennessee Rules of Civil Procedure 52 and 59, seeking reconsideration of the trial court's findings and ruling. Dr. Bakker postulated that because the issue of Erlanger's alleged lack of notice had not been raised, Dr. Bakker's obligation to respond had not been triggered. On June 9, 2022, Erlanger filed a motion to alter or amend, also pursuant to Tennessee Rules of Civil Procedure 52 and 59. In its motion, Erlanger sought an amendment to the court's opinion to add as additional bases for the grant of summary judgment: (1) Dr. Bakker's purported failure to present any admissible evidence that demonstrated a genuine dispute of material fact as to the dangerous and defective condition and causation elements of her claim and (2) Dr. Bakker's comparative fault.

On June 28, 2022, Dr. Bakker filed a notice of appeal. The following day, the trial court entered an order denying the parties' respective post-judgment motions filed pursuant to Tennessee Rules of Civil Procedure 52 and 59.

II. Issues Presented

Dr. Bakker presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court erred by granting summary judgment in favor of Erlanger predicated on Erlanger's lack of notice of a dangerous condition without affording Dr. Bakker a reasonable opportunity to respond.

2.  Whether the trial court erred by raising grounds for summary judgment *sua sponte*.

3.  Whether the trial court erred by granting summary judgment in favor of Erlanger when genuine issues of material fact existed.

4. Whether the trial court erred by impermissibly weighing the evidence when considering the summary judgment motion.

Erlanger raises the following additional issues:

5. Whether the trial court erred by declining to grant summary judgment in Erlanger's favor on the alternate basis that Dr. Bakker failed to prove that a dangerous or defective condition existed and caused her injuries.

6. Whether the trial court erred by declining to grant summary judgment in Erlanger's favor based on the doctrine of comparative fault.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive

summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. [574,] 586, 106 S. Ct. 1348, [89 L. Ed. 2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

IV. Propriety of Grant of Summary Judgment

Dr. Bakker asserts that the trial court erred by granting summary judgment in favor of Erlanger based on Erlanger's lack of constructive notice of the purported dangerous condition presented by the pneumatic tubes or cords. Dr. Bakker argues that because Erlanger never raised this argument as a basis for summary judgment in its pleadings, she was not afforded notice of this issue and a reasonable opportunity to respond. She further contends that it was error for the trial court to raise this issue *sua sponte*. Erlanger urges that the grant of summary judgment was proper and also argues

that the trial court should have found lack of proof of the existence of a dangerous condition and comparative fault as additional bases for its summary judgment ruling.

At the outset, we note that governmental entities, such as Erlanger, possess sovereign immunity from lawsuits except as they consent to be sued.[2] *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The GTLA, codified at Tennessee Code Annotated §§ 29-20-101, *et seq.* (2012 & Supp. 2023), governs claims against governmental entities. *See Hawks*, 960 S.W.2d at 14. As our Supreme Court has explained:

> [T]he Legislature enacted the GTLA, which reaffirmed generally the grant of sovereign immunity provided at common law and in the Tennessee Constitution by stating that "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). However, in addition to reaffirming the general grant of immunity, the GTLA also enumerates certain statutory exceptions where governmental immunity is specifically removed. *Id.* § 29-20-202 [through -205.]

*Young v. City of LaFollette*, 479 S.W.3d 785, 790 (Tenn. 2015) (additional internal citations omitted). Pursuant to Tennessee Code Annotated § 29-20-204(a) (2012), "[i]mmunity from suit of a governmental entity is removed for injury caused by the dangerous or defective condition of any public building, structure, . . . or other public improvement . . . owned and controlled by such governmental entity." In addition, Tennessee Code Annotated § 29-20-204(b) provides that "[i]mmunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proven[.]"

The GTLA "codifies the common law obligations of owners and occupiers of property embodied in premises liability law." *See Lindgren v. Johnson Cty.*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002). These obligations include an affirmative duty of care to "protect against dangers of which one knows or which, with reasonable care, might discover." *Id.* "Because of their superior knowledge of the condition of the premises, owners and occupiers of property, including owners and occupiers of public property, owe persons lawfully on their property the duty of reasonable care under all the circumstances." *Sears v. Metro. Nashville Airport Auth.*, No. 01A01-9703-CV-00138, 1999 WL 536341, at *4 (Tenn. Ct. App. July 27, 1999) (citing *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980); *see Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996)). This duty includes the duty either to remove dangerous conditions on their

---

[2] Erlanger concedes that it is considered a governmental entity subject to the provisions of the GTLA.

premises or to warn persons about dangerous conditions that the owner knows or should know about. *Sears*, 1999 WL 536341 at \*4. It does not include the duty to remove or to warn about conditions from which no unreasonable risk could be anticipated or conditions that the owner or occupier neither knew about nor could have reasonably discovered. *Id.*

This Court has identified four elements required for a successful premises liability claim against a governmental entity:

(1)    proof that the governmental entity owns and controls the premises where the injury occurred;

(2)    proof that a dangerous or defective condition, or in the case of sidewalks and streets an unsafe condition, caused the injury;

(3)    proof that the governmental entity had "constructive and/or actual notice" of the condition; and

(4)    proof that the governmental entity breached its duty either to remove or eliminate the dangerous condition or to provide adequate warnings of the condition's existence.

*Huskey v. Rhea Cnty.*, No. E2012-02411-COA-R3-CV, 2013 WL 4807038, at \*5 (Tenn. Ct. App. Sept. 10, 2013); *Sears*, 1999 WL 536341, at \*5 (citing Tenn. Code Ann. §§ 29-20-203(b), -204(b)).

In the case at bar, the trial court concluded in its May 25, 2022 order that Dr. Bakker had presented a jury question concerning whether a dangerous condition existed at Erlanger on the date of her injury. The court noted that although Dr. Bakker had testified at various times in her deposition that she "assumed that her foot got tangled in the cords, but she was not certain that was what happened," she had also testified that she had stepped into the looped cords on the floor and fell down. Accordingly, the court concluded that "it would be up to the jury to decide which version [of Dr. Bakker's testimony] they believe." Ergo, the court found that Dr. Bakker had satisfied the first two elements of a premises liability claim at the summary judgment stage.

With regard to the third element of such a claim, proof that the governmental entity had "constructive and/or actual notice" of the condition, the trial court determined that Dr. Bakker had presented no evidence that "Erlanger had notice of a dangerous condition in Room 20 of the Perinatal Unit on or before January 3, 2019." On appeal, Dr. Bakker argues that the trial court erred by relying on this element as a predicate for granting summary judgment in favor of Erlanger when Erlanger did not raise the notice

- 9 -

element as a basis for summary judgment. Following our review of the appellate record, we agree.

In Erlanger's motion for summary judgment, Erlanger failed to raise its lack of actual or constructive notice of the allegedly dangerous condition as a basis for summary judgment. Erlanger also failed to include any statements concerning lack of notice in its statement of undisputed material facts. During the summary judgment hearing, the trial court questioned counsel regarding this issue, and the following exchange occurred:

| | |
|---|---|
| Trial Court: | Is notice an issue in this motion? I looked through it quickly, but – |
| Dr. Bakker's counsel: | They've not alleged it. |
| Erlanger's counsel: | Your Honor, ultimately, there are a lot of issues in this case, but this is the—this is where we're dealing with as far as summary judgment, where we have undisputed material facts. |
| Trial Court: | Okay. All right. And notice—if necessary, notice would be contested at trial? |
| Erlanger's counsel: | Yeah, there would be—I mean, there are all the elements that would be the burden for the plaintiff to prove. |
| Trial Court: | Okay. But it's not part—it is not—has not been raised in this motion? |
| Erlanger's counsel: | Correct, Your Honor. |
| Trial Court: | Notice has not? I thought not, but I wanted to make sure I hadn't missed something. Okay. Thank you. |

We emphasize that pursuant to the requirements of Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's

- 10 -

claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03.

*Rye*, 477 S.W.3d at 264-65. Moreover, as this Court has clarified:

> The statements of material facts submitted by the parties on a motion for summary judgment are "intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own."

*Holland v. City of Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) (quoting *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001)).

In this case, Erlanger failed to raise the notice issue in its motion for summary judgment, and it provided no statements of undisputed material fact concerning its alleged lack of notice. In addition, Erlanger acknowledged during the summary judgment hearing that it was not relying on lack of notice as a basis for the grant of summary judgment, conceding that this was an issue that it would address at trial if necessary. As such, the trial court erred by relying on Erlanger's purported lack of notice as the basis for its grant of summary judgment.

This Court has previously held that a trial court cannot raise issues *sua sponte* when granting summary judgment except in "rare cases and with meticulous care." *See Owens v. Vanderbilt Univ. Med. Ctr.*, No. M2021-01273-COA-R3-CV, 2023 WL 3522326, at *3 (Tenn. Ct. App. May 18, 2023) (quoting *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 284 (Tenn. 2005); *Thomas v. Transp. Ins. Co.*, 532 S.W.2d 263, 266 (Tenn. 1976)). Rather, the nonmoving party "must be 'given notice and a reasonable opportunity to respond to all issues to be considered by the court.'" *Owens*, 2023 WL 3522326, at *3 (quoting *Mar. Grp., Inc. v. Bellar*, 908 S.W.2d 956, 959 (Tenn. Ct. App. 1995)).

In *Owens*, a health care liability action, the defendant hospital sought a grant of summary judgment on the sole basis that the plaintiff's proffered standard of care expert was not competent to testify pursuant to the applicable statute. *See Owens*, 2023 WL 3522326, at *3. The trial court granted summary judgment to the defendant, determining that the plaintiff's proffered standard of care expert was not qualified pursuant to the statute and also that her testimony was inadmissible pursuant to Tennessee Rules of Evidence 702 and 703. *See id.* On appeal, this Court found that ruling to be erroneous inasmuch as the plaintiff "had no notice and no opportunity to respond to an admissibility challenge to [her expert's] testimony." *See id.*

Similarly, here, Dr. Bakker was provided neither notice of nor an opportunity to respond to the issue of Erlanger's alleged lack of actual or constructive notice of the dangerous condition. Erlanger's motion for summary judgment relied solely on its arguments that no liability could attach because no dangerous condition existed and because Dr. Bakker was more than fifty percent at fault. Erlanger does not mention the issue of its alleged lack of notice in either its motion or the accompanying statement of undisputed material facts. Instead, the trial court raised and addressed this issue of its own accord despite Erlanger's acknowledgement during the summary judgment hearing that it was not relying on such as a predicate for summary judgment. Accordingly, the trial court's grant of summary judgment based on Erlanger's alleged lack of notice was erroneous. *See id.*

On appeal, Erlanger contends that the issue of notice was "voluntarily injected" into the summary judgment proceeding by Dr. Bakker's responsive statement of disputed material facts wherein Dr. Bakker stated, *inter alia*, that Erlanger was "aware of the unreasonably dangerous condition created by sequential compression device tubes and cords" and "was aware of the need to cure this problem." We reiterate, however, that Erlanger did not maintain this position in the trial court. Instead, when questioned about Erlanger's reliance on the issue of lack of notice at the summary judgment hearing, Erlanger's counsel replied that notice was not an issue and was not being relied on as a basis for the grant of summary judgment. Erlanger cannot now maintain an inconsistent position on appeal. *See Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37, 40 (Tenn. Ct. App. 1982) (holding that a party "cannot take a position on appeal inconsistent with that taken in the trial of the case."); *Price v. Tenn. Prod. & Chem. Corp.*, 385 S.W.2d 301, 307 (Tenn. Ct. App. 1964) ("When a cause is brought up for appellate review, a party cannot assume an attitude inconsistent with, or different from, that taken by him at the trial."); *Bradley Cnty. v. City of Cleveland*, No. E2012-00634-COA-R3-CV, 2012 WL 5333555, at *8 (Tenn. Ct. App. Oct. 30, 2012) ("A party is not allowed to take one position in the trial court and then take a contrary position on appeal.").

Erlanger also posits that the trial court erred by declining to grant summary judgment in Erlanger's favor on the alternate bases of (1) Dr. Bakker's alleged failure to prove that a dangerous or defective condition existed and (2) comparative fault.

- 12 -

Respecting Dr. Bakker's proof concerning the existence of a dangerous condition, Erlanger asserts that the trial court erred in relying on Dr. Bakker's testimony because it was in conflict. Erlanger points out that in certain portions of her deposition testimony, Dr. Bakker testified the pneumatic tubes caused her fall while at other times, she stated that she was unsure of what caused her to fall. Having reviewed the evidence in the light most favorable to Dr. Bakker as the non-movant, however, we disagree with Erlanger's contentions.

Erlanger relies on what Tennessee courts have termed the "cancellation rule," which provides that a witness's contradictory statements of fact "cancel each other out and force us to disregard them as a matter of law." *See Ayers by Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 162 (Tenn. Ct. App. 1984); *see also Tibbals Flooring Co. v. Stanfill*, 410 S.W.2d 892, 896 (Tenn. 1967) ("Contradictory statements of a witness in connection with the same fact have a result of cancelling out each other."). However, as this Court has also explained with regard to the cancellation rule in a summary judgment context:

> Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out. The Tennessee Supreme Court has characterized mutually contradictory statements by the same witness as "no evidence" of the fact sought to be proved. *See Johnston v. Cincinnati N.O. & T.P. Ry.*, 146 Tenn. 135, 160, 240 S.W. 429, 436 (1922). However, in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence. When the cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion.

*Church v. Perales*, 39 S.W.3d 149, 169-70 (Tenn. Ct. App. 2000) (other internal citations omitted).

Viewing the evidence in the light most favorable to Dr. Bakker, we conclude that the trial court did not err in declining to grant summary judgment on the basis that Dr. Bakker's deposition statements "canceled each other out." In her February 2022 affidavit filed in opposition to the summary judgment motion, Dr. Bakker explained that what she had attempted to convey in her deposition was that although she was unsure of what was happening at the "exact moment" of her fall because she was looking at the patient rather than the floor, she knew that she felt a "tug" on her leg that caused her to trip. Dr. Bakker further explained that in the moments following her fall when she was lying on the ground, she determined that the only possible cause of her fall was the tubing running across the floor from the sequential compression device. As the trial court pointed out in

- 13 -

its order, Dr. Bakker testified that she "stepped into the looped cords that were on the floor and fell down." Accordingly, we agree with the trial court that the evidence is sufficient to create a genuine issue of material fact concerning whether a dangerous condition existed on the date of Dr. Bakker's injury.

With reference to comparative fault, we note that the trial court made no determination concerning this issue in its judgment. Accordingly, we cannot address this issue for the first time on appeal. Appellate courts are courts "of appeals and errors," "limited in authority to the adjudication of issues that are presented and decided in the trial courts." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976). We therefore decline to address this issue in the absence of the trial court's adjudication thereof.

Having determined that Dr. Bakker was not "given notice and a reasonable opportunity to respond to all issues to be considered by the court" at the summary judgment stage, *see Owens*, 2023 WL 3522326, at *3, we conclude that the trial court's grant of summary judgment in favor of Erlanger must be vacated.

## V. Conclusion

For the foregoing reasons, we vacate the trial court's grant of summary judgment. This case is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed to the appellee, Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System.

Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE

- 14 -