## SEAHORN v. KARR.—242 S. W. (2d) 331.

Eastern Section.    March 13, 1951.

Petition for Certiorari denied by Supreme Court, August 31, 1951.

Kolwyck & Clark and Robert E. Cooper, all of Chatta-nooga, for plaintiff in error.

Strang, Fletcher & Carriger, of Chattanooga, for defendant in error.

McAMIS, J. M. D. Seahorn, Jr., as the Administrator of the estate of his father, M. D. Seahorn, Sr., instituted this suit to recover damages for the death of the intestate who was struck and killed by the automobile of the defendant Charles Lee Karr. The death of M. D. Seahorn, Sr., occurred at or near the intersection of Belvoir Avenue and Brainerd Road in Chattanooga, November 6, 1949, after dark and about 7:00 P. M.

Brainerd Road is a four lane through street running from east to west into the City of Chattanooga. Belvoir Avenue approaches from the southeast forming an acute angle at the southeasterly corner of the intersection. Belvoir Avenue does not cross Brainerd Road. There are no sidewalks along either of these streets. Karr approached the intersection from the east. Looking from east to west Brainerd Road comes to the crest of a slight rise at the intersection and turns gradually to the right at that point. Approximately 165 feet west of the crest there is a bus stop at the north side of Brainerd Road for the use of west-bound bus passengers.

The deceased left the home of M. D. Seahorn, Jr., located about two blocks south of Brainerd Road, to go to the north side of Brainerd Road and there catch a bus into the City. He was 81 years of age and, according to the proof, had the normal faculties of hearing and eyesight for one of that age. He was accustomed to traveling by bus. The undisputed evidence is that traffic was heavy on Brainerd Road on all four lanes. Karr, traveling with his wife and small son, was traveling in the second lane from the north, being also the one next to the center line, keeping his relative position in a line of traffic moving

west. According to the undisputed proof he was driving about 30 miles per hour, 5 miles less than the prevailing limit. The headlights on his car were burning and, according to Karr and his wife, he was maintaining a lookout as he approached the intersection by watching the car in front of him.

While driving in this position and after his car had entered the curve to the right both Karr and his wife felt the car strike some object. Mrs. Karr looked back and saw an object in the street which she thought to be a man. Karr testified that he immediately tried to park on the right but encountered west-bound traffic moving along the north lane and was unable to do so until, according to the evidence, his car had reached a point some 200 feet west of where Mr. Seahorn was struck. After discovering that the object was a man in the street, he went to a telephone and called the police with the request that they send an ambulance. There were no eyewitnesses to the accident. On this evidence the trial judge directed a verdict for defendant Karr at the conclusion of all the evidence and the assignments, while numerous, make the insistence that the deceased as a pedestrian attempting to cross at an intersection had the right of way and is entitled to the presumption of due care for his own safety; that the defendant was negligent in the operation of his automobile in failing to yield the right of way to the deceased and in the manner in which he operated his automobile at the time.

The parties are in disagreement as to the confines of the intersection, plaintiff insisting that it is to be determined by the extension of the west side of Belvoir Avenue straight across Brainerd Road with the result that the cross-walk over which the deceased would have been required to pass in going from the south side of Brainerd

Road to the north would extend diagonally across Brainerd Road, while defendant insists that the cross-walk should be located as running at right angles across Brainerd Road from the west side of Belvoir Avenue at the point where it intersects with Brainerd Road. It is further insisted by plaintiff that the cross-walk should be located a few feet further west because, if there had been a sidewalk along Belvoir Avenue, the cross-walk would have continued from the end of the sidewalk.

The importance of the location of the cross-walk revolves around the location of the body of the deceased following the accident. If the cross-walk is to be considered as running at right angles across Brainerd Road the body was found approximately 65 feet to the west and being, at the same time, 65 feet west of the crest of the rise. On the other hand, if the cross-walk be considered as an extension of the west side of Belvoir Avenue, the distance would be 42 feet west of the cross-walk as so located. The proof shows that the body was lying on or near the white line dividing the north half of Brainerd Road, approximately 21 feet from the north edge of the pavement with the head of the deceased about 2 feet from the line and the feet extending eastwardly. At this point he bled profusely before being placed in an ambulance. There was no indication from the condition of his clothing or the location of blood on the pavement that his body had been caught and dragged by the car.

It is thus apparent from the undisputed proof that, if the cross-walk be located most favorably to plaintiff by considering it as an extension of the west side of Belvoir Avenue, the deceased was picked up at a point approximately 42 feet west of the cross-walk. (We cannot accept the insistence that the cross-walk is to be considered as the extension of an imaginary sidewalk at

least in the absence of a showing that there was room within the right of way for a sidewalk without encroaching on private property.) It is thus unnecessary to decide the disputed question of where the cross-walk should be located since, under either contention, the deceased was not in it but at least 42 feet to the west.

Code Section 2687 (c) provides: "The driver of any vehicle upon a road, street, or highway within a business or residence district shall yield the right of way to a pedestrian crossing such a road, street or highway within any clearly marked cross-walk or any other regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices. Every pedestrian crossing a road, street or highway within a business or residence district at any point other than a pedestrian crossing, cross-walk, or intersection, shall yield the right of way to vehicles upon such road, street or highway."

Conceding, without deciding, that a jury as the triers of the facts might allow some latitude to a pedestrian in deviating from the cross-walk as defined by the statute, we think it must be said as a matter of law that one crossing a street 42 feet from such a cross-walk is not within it and, consequently, does not have the right of way over vehicles.

Under the Statute, a pedestrian who undertakes to cross a street or highway at any point other than a pedestrian crossing, cross-walk or intersection must yield the right of way to vehicles. This does not mean, however, that the driver of a vehicle is relieved of the duty of maintaining a reasonable lookout for pedestrians between intersections. On the contrary, as in the case of

pedestrians crossing at intersections, Tri-State Transit Co. v. Duffey, 27 Tenn. App. 731, 173 S. W. (2d) 706, 710, the precedence given by statute to vehicles traveling between intersections is relative and, to quote from the opinion in that case, ''only has the effect of turning the scales where the rights of the parties are balanced.''

■ Even under that construction and application of the statute, however, we think the defendant was entitled to a directed verdict at the conclusion of all the evidence. Giving the deceased the benefit of the presumption that he was in the exercise of due care for his own safety and therefore would not have crossed except in observance of the statute, every circumstance in the case, as we have indicated, shows, to the contrary, that he was crossing at a point where it was his duty to yield the right of way. As was said in Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618, the presumption of due care, arising out of the natural instinct for self-preservation, has application only in the absence of evidence, either direct or circumstantial, showing how the injury was received, and disappears when such evidence is produced.

■ Moreover, the presumption that the deceased was exercising due care for his own safety is not evidence of defendant's negligence. It does not shift the burden of proof to defendant nor authorize the jury to speculate as to the cause of death. Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911.

■ Even though a jury might have rejected the testimony of Karr and his wife because of their interest in the outcome of the case, Poole v. First National Bank, 29 Tenn. App. 327, 341, 196 S. W. (2d) 563, there is no proof that Karr saw or should have seen that the deceased would not yield the right of way or that he was not upon the lookout for pedestrians, or so operated his

automobile that he could not control its movements, or that he was otherwise negligent. In all these respects, the burden of proof continued throughout upon plaintiff.

It is strenuously insisted, however, that one of the photographs of defendant's car taken immediately following the accident shows that the dust film had been wiped off the left front fender of the car indicating, it is said, that the deceased came into contact with the car at that point. The undisputed proof for defendant, on the other hand, shows that the impact was at the left rear door and it is his insistence that the film on the front fender could have been removed by some person walking by the car or a filling station attendant leaning over to wipe the windshield. It should be pointed out in this connection that the space from which the film has been removed as shown by the photograph does not continue back to the point where the main impact occurred at the left rear. door and fender. In the absence of proof that the film had not been removed before the collision with the deceased, we think a jury could not arrive at the conclusion that he first contacted defendant's car at that point without resorting to conjecture and speculation. But even if the contrary be assumed, we still think there is no proof that the deceased appeared in front of defendant's car as an obstruction or that the defendant saw or should have seen in time to avoid the collision, that he was not going to yield the right of way. Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911.

Affirmed with costs.

Hale and Howard, JJ., concur.