IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 16, 2002 Session

## WILLIAM R. LINDGREN, and wife, MELANIE LINDGREN v. CITY OF JOHNSON CITY

**Direct Appeal from the Washington County Law Court**
**No. 19720     Hon. Jean Stanley, Judge**

**FILED JUNE 25, 2002**

**No. E2001-01676-COA-R3-CV**

Plaintiff was injured by falling on defendant's sewer covering. The Trial Court found for plaintiff and awarded damages against City. On appeal, we affirm finding of liability, but vacate award of damages and remand with instructions to determine the total amount of damages, find percentage of fault, and then enter judgment in accordance with the Governmental Tort Liability Act. We Affirm in Part, Vacate in Part and Remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Law Court Affirmed in Part, Vacated in Part and Remanded.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Earl R. Booze, Johnson City, Tennessee, for Appellant, City of Johnson City.

Anthony Alan Seaton, Johnson City, Tennessee, for Appellees, William R. Lindgren and wife, Melanie Lindgren.

**OPINION**

In this action, plaintiffs sued for personal injuries suffered by William R. Lindgren when he stepped on a rectangular shape sanitary sewer cover, which tilted and gave way under him in a trap-door fashion.

On April 4, 1998, plaintiff was walking on the west side of Roan Street in Johnson City, when he observed a rectangular shaped cover, which appeared to him to be flat and secure, but

as he stepped on the corner of the cover it slipped in a "trap-door" action, pivoting up and causing the opposite corner to puncture his groin and abdomen as he fell partially into the hole. Plaintiff suffered life-threatening injuries requiring emergency surgery and five total hospitalizations. Because of the extensive permanent damage to the abdominal wall, he is permanently restricted from lifting more than ten pounds.

This action was brought against the defendant, City of Johnson City, and ultimately Frizzell Construction and Frizzell Engineering Company was joined as a defendant.

At trial, the evidence revealed that about a week prior to the accident, Gary Waddell, a surveyor for Frizzell Engineering, was at the site locating utilities for a topographical survey. Waddell testified he recalled raising the lid, where plaintiff fell, enough to see down in the hole and saw raw sewage running underneath, but he did not completely remove the lid. Because this was not a typical round manhole, Waddell decided to call the City Engineer after he returned to his office, the same day. He testified that he saw the piece of metal lying on the ground as dangerous, and that it was a shallow sewer line underneath so he "called the City to alert them about this problem". With respect to his reason for calling the City, he further testified:

> Q.     All right. Now, as a matter of fact, you didn't even feel like it was a manhole, did you?
>
> A.     No, sir, I didn't. That's the reason I called the City was to see if they could advise me as to what it was. I didn't know why it was there or what the situation was.

Waddell testified he called the City Engineer, Alan Cantrell, whom he had known and dealt with over the years, because he felt Cantrell would know what was going on. He further testified "The response was that I remember getting from the City is that they didn't know what it was or why it was there, and basically it dropped at that point." Plaintiff introduced testimony from Frank Knisley, an architect who inspected the site the day after the accident, and took photographs and measurements. He testified there was a three or four inch lip of sod accumulated over a corner of the cover which was of longstanding duration, and in his opinion, any experienced person's inspection could spot this condition. He further opined that the reason the cover pivoted was dirt and debris on the rim preventing it from properly seating the cover, and not a design flaw.

Alan Cantrell, the City Engineer, testified and denied receiving any telephone call from Waddell about the cover. He explained he had testified in his deposition that "it could be a possibility" that Waddell called him, but he later checked his calendar and he was on vacation that week. However, he admitted that he had no reason to doubt Waddell's honesty and integrity if he testified he did speak to him about a piece of sheet metal lying over a storm sewer.

Doug Childers, Assistant Superintendent of the water and sewage department, testified he had no prior complaints or records showing problems with this sanitary sewer cover, and

no records of anyone having been at this location on any prior occasion. He did not know if the cover had been moved at any time prior to Waddell's lifting it.

At the conclusion of the trial, the Trial Judge found the City had notice that Waddell had moved the lid one week before the accident, and observed:

> It was well known to defendant that such a lid, not properly confined within the boundary of its rim can pivot and would not support the weight of a person stepping on it. It thus becomes like a land mine - benign until stepped on. This is especially true in light of the fact that this is in an area where people are expected to walk and that anyone could kick or hit this cover knocking it out of its frame. Under these facts, the City was obligated to make sure the cover was secure and stable.

Essentially, the Trial Court found Waddell made the phone call and we do not generally disturb the fact finder's finding of credibility.

The Trial Court then assessed fault as 100% against the City and awarded Judgment to Mr. Lindgren in the amount of $130,000.00 and $25,000.00 to his wife, Ms. Lindgren.

Our review of a Trial Court's finding of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). *Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000). This standard also applies to appellate review of allocation of fault in bench trials. *Id.* Suit was filed under the Governmental Tort Liability Act, Tenn. Code Ann. §29-20-101 *et seq.*, which basically codifies the common law obligations of owners and occupiers of property embodied in premises liability law, which generally requires the exercise of ordinary care and diligence in maintaining the premises, including an affirmative duty to protect against dangers of which one knows or which, with reasonable care, might discover. *See Sanders v. State*, 783 S.W.2d 948 (Tenn. Ct. App. 1989); *McCormick v. Waters*, 594 S.W.2d 385 (Tenn. 1980); *Underwood v. HCA Health Servs. Of Tennessee*, 892 S.W.2d 423, 427 (Tenn. Ct. App. 1994). Whether a particular site is defective, unsafe or dangerous is a question of fact. *Helton v. Knox County*, 922 S.W.2d 877 (Tenn. 1996).

Actual notice is "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon Co.*, 892 S.W.2d 403, 409 (Tenn. 1994). Constructive notice is "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Id.*

The issues as raised by the City on appeal are:

I.      Whether the Plaintiffs failed to present sufficient evidence as required by Tenn. Code Ann. §29-20-204(b) that the Defendant City of Johnson City had

-3-

actual and/or constructive notice of the alleged dangerous condition of the sanitary sewer cover on which the Plaintiff William Lindgren fell?

II. Whether the Court erred in finding the City of Johnson City one hundred percent (100%) at fault based upon the evidence introduced at trial fo the comparative fault/negligence of Plaintiff William Lindgren and Defendant Frizzell Engineering?

III. Whether the trial court committed error in overruling the objection to testimony and denying the Motion to Strike the testimony of Plaintiffs' expert witness Frank Knisley offered at trial concerning matters upon which he had not previously expressed an opinion in his pretrial discovery depositions, affidavits and responses to interrogatories?

*Sanders v. State*, 783 S.W.2d 948 (Tenn. Ct. App. 1989), held that constructive notice was established in that case where a concrete footing for monkey bars was dangerously exposed above ground and injured the plaintiff. Notice was shown due to the sheer time element of wearing away of the soil around the area through weather and scuffing of feet on the playground. As applied to the facts of the case at bar, the discoloration of the portion of the sewer cover shows that the cover was neglected by defendant for a long period of time, and that a build-up was allowed to accumulate over a long period, as demonstrated by a three or four inch lip of well-established sod and grass and clay which, if dislodged, could create a dangerous situation. Assistant Superintendent Childers testified that removing the cover could make it very unstable, and he instructs employees who lift covers to clean covers, and instructs them on how to set the covers properly. He then goes back and checks their work behind them. We hold the City knew, or reasonably should have known of this dangerous condition due to the lack of attention before and after the call by Waddell. *See Bradford v. City of Clarksville*, 885 S.W.2d 78 (Tenn. Ct. App. 1994); *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 177 (Tenn. Ct. App. 1987); *Bragg v. Metropolitan Gov't of Nashville*, 1997 Tenn. App. Lexis 928, 01A01-9703-CV-00111. *Accord: Hawks v. City of Westmoreland*, 960 S.W.2d 10 (Tenn. 1997).

A trial court has considerable latitude in allocating fault between or among culpable parties, and the appellate court reviews same with a presumption of correctness. *Coln v. City of Savannah*, 966 S.W.2d 34, 44 (Tenn. 1998). In this case, the Trial Judge allocated no fault to the plaintiff, and the evidence does not preponderate against that finding. However, the Trial Judge allocated 100% fault to defendant City and pretermitted the issue of whether any fault should be apportioned to Frizzell. The action as to Frizzell had been dismissed without prejudice, apparently upon some settlement being made between the plaintiff and Frizzell.

The Trial Court has the responsibility to apportion fault to anyone having a degree of culpability. *See Carroll v. Whitney*, 29 S.W.3d 14, 22 (Tenn. 2000); *Dotson v. Blake*, 29 S.W.3d 26 (Tenn. 2000); *Bervocets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905 (Tenn. 1994). The trier of fact in a comparative fault case, such as this, should first determine the total amount of the

plaintiff's damages without regard to fault, and then apportion damages on the percentage of fault attributable to each tortfeasor. *Grandstaff v. Haws*, 36 S.W.3d 482 (Tenn. Ct. App. 2000). In this case, the Trial Court did not follow this procedure, although defendant Johnson City had raised the comparative fault of Frizzell as an affirmative defense. In a post-trial Motion, the plaintiff's attorney sought to correct this error. However, at defendant's urging, the Court ruled that it had lost jurisdiction of the case to the appellate process. We vacate the award of damages and remand with directions to the Trial Court on this record, without hearing further proof, to determine the total amount of damages to which plaintiff would be entitled, and then determine the percentage of fault, if any, attributable to Frizzell, and then enter Judgment against defendant, based upon the percentage of fault attributed to the City in accordance within the constraints of the Governmental Tort Liability Act, Tenn. Code Ann. §29-20-101 *et seq.* Defendant also raised as an issue the admission of Frank Knisley's testimony, which we find to be without merit.

The decisions of the Trial Court regarding the admission or exclusion of expert testimony, are within the sound discretion of the Trial Court. *White v. Vanderbilt University*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999); *McDaniel v. CSX Transp., Inc.,* 955 S.W.2d 257, 263 (Tenn. 1997). This Court will not overturn a Trial Court's decision, either to admit or exclude expert testimony, unless it was arbitrary or an abuse of discretion. *White*; *Buchanan v. Harris*, 902 S.W.2d 941 (Tenn. Ct. App. 1995). In *England v. Burns*, 874 S.W.2d 32 (Tenn. Ct. App. 1993) this Court said:

> No sanctions are provided by the rules of civil procedure for failure to "seasonably" supplement a response to an interrogatory regarding expert testimony. *See, Lyle v. Exxon Corp.*, 746 S.W.2d 694 (Tenn. 1988).

> By extension, there is no provision in the rules for failure of a witness to report the formation of an opinion after testifying that he has not yet formed an opinion.

> The resolution of the question of admissibility of the testimony of this witness was governed by a rule of fairness as administered within the sound discretion of the Trial Court.

We hold the admissibility of Knisley's opinion evidence expressed at trial was a matter within the Trial Court's sound discretion.

The cause is remanded for further proceedings in accordance with this Opinion, and the cost of the appeal in our discretion is assessed to the City of Johnson City.

_____
HERSCHEL PICKENS FRANKS, J.