IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2024

FILED
01/02/2025
Clerk of the
Appellate Courts

## SANDRA EASLEY v CITY OF MEMPHIS

**Appeal from the Circuit Court for Shelby County**
**No. CT-004777-18  Damita J. Dandridge, Judge**

_____

**No. W2023-00437-COA-R3-CV**

_____

Plaintiff was injured after attempting to cross a street outside of a crosswalk and being struck by a city-owned vehicle driven by a city employee. The trial court found that the city was vicariously liable for the employee-driver's negligence and directly liable for its negligent hiring and retaining of the employee-driver. The trial court ultimately found the plaintiff 10% at fault for her injuries. The city appealed, and this Court reversed, finding that there was no proof of negligent hiring and that the evidence preponderated against the trial court's allocation of fault. Instead, this Court concluded that the plaintiff was at least 50% at fault, barring recovery. The Tennessee Supreme Court vacated the judgment as failing to afford the trial court's findings of fact appropriate deference, but acknowledged the plaintiff's failure to appeal the conclusion that the negligent hiring finding was unsupported. On remand, we affirm in part, reverse in part, vacate in part, and remand the matter to the trial court for the re-allocation of fault and calculation of damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Vacated in Part and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Dale H. Tuttle, Memphis, Tennessee, for the appellant, City of Memphis.

Mari-Elizabeth Sanford, Memphis, Tennessee, for the appellee, Sandra Easley.

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Appellee Sandra Easley ("Plaintiff") filed a complaint in the Shelby County Circuit Court ("the trial court") on October 18, 2018. Therein, Plaintiff alleged that she was injured on December 8, 2017, when she was "suddenly and without warning" struck by a vehicle driven by an employee of Defendant/Appellant the City of Memphis ("the City"). Plaintiff explained that at the time of the accident she was attempting to cross A.W. Willis Avenue in Memphis, Tennessee, approximately forty feet from the North Main Street intersection. Plaintiff alleged that the City's employee, Defendant Paul A. Haynie, was (1) negligent in operating the vehicle by, inter alia, failing to maintain a proper lookout and failing to yield the right-of-way; and (2) negligent per se in violating multiple state statutes and local ordinances.[2] Plaintiff further alleged that the City was vicariously liable for the negligence of its employee, and also directly negligent in hiring, supervising, and training Mr. Haynie. Plaintiff sought a judgment of $350,000.00 for "personal injuries, pain and suffering, loss of enjoyment of life, loss of earnings and earning capacity, medical expenses, workers compensation liens, fees, and expenses[.]"

In its answer, the City denied "caus[ing] or in any way contribut[ing] to cause Plaintiff's alleged injuries and damages." Instead, the City alleged that "Plaintiff suddenly and without warning stepped into the path of the vehicle being operated lawfully on the city streets of Memphis by Paul A. Haynie and as a result of Plaintiff's dodging into the path of the vehicle[,] contact was made." The City raised, inter alia, the affirmative defenses of comparative fault and negligence per se.

The bench trial was held on November 10, 2022. Plaintiff and Mr. Haynie were the only witnesses. Plaintiff explained that at the time of the accident she was part of a group of pedestrians attempting to cross A.W. Willis Avenue approximately forty feet from the intersection. Plaintiff testified that the City truck driven by Mr. Haynie and one other vehicle were driving up A.W. Willis Avenue, and that both vehicles came to a stop to let the group of pedestrians cross, with the truck in the rightmost lane, closest to the sidewalk, and the other vehicle in the middle lane. Plaintiff also testified that the light at the North Main Street intersection was red. Plaintiff testified that she watched the driver of the truck as she attempted to cross in front of it, and that she observed the driver using his cell phone.

According to Plaintiff, the rest of the pedestrians had successfully crossed in front of both the truck and the other vehicle, but she "[w]asn't even in the middleways of the truck" when she was struck by the front passenger side of the truck. Plaintiff testified that she was hit "in [her] waist area" and landed on her right side. Plaintiff complained of pain

would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Mr. Haynie was named as a defendant in Plaintiff's complaint, but was subsequently dismissed pursuant to Tennessee Code Annotated section 29-20-310(a). Neither party disputes this dismissal.

in both legs.

After being struck, Plaintiff was able to walk back toward the side of the street where she had attempted to cross. She explained that Mr. Haynie was still on the phone upon exiting the truck, but "didn't actually say anything" when Plaintiff asked if he realized that he had hit her.

Plaintiff was able to call for an ambulance and was transported to Methodist North Hospital, where she underwent an x-ray and MRI and received muscle relaxers and Ibuprofen. Plaintiff was also provided with crutches, which she used for approximately one month. Plaintiff was discharged and told to follow up with her primary care physician or the emergency room if the pain continued. Plaintiff testified that she returned to the emergency room four days later, having "more issues" with her left leg and knee area. Plaintiff again received muscle relaxers and Ibuprofen.

Plaintiff also sought physical therapy treatment for her left side and lower back pain, attending three sessions a week for approximately one month. Plaintiff acknowledged that she was directed by her legal counsel, rather than Methodist North Hospital, to attend physical therapy. The physical therapy center took x-rays and sent Plaintiff for another MRI. Plaintiff testified that she missed two weeks of work, including one week without pay.[3]

Plaintiff conceded that a crosswalk was available and that she would not have come into contact with the City truck if she had stayed on the sidewalk. But Plaintiff further testified that she would not have stepped off the sidewalk into the street if the City truck and the other vehicle were not stopped.

Prior to the close of her proof, Plaintiff read into the record a portion of Mr. Haynie's response to discovery requests, in which he acknowledged that he was driving a City-owned truck in the course his employment. Mr. Haynie further stated in his response that:

> I was stopped behind two vehicles at the light of A.W. Willis and Front Street [sic]. When the light turned green, the two vehicles in front of me began to move. As I let my foot off of the brake of my vehicle, the plaintiff suddenly and without warning walked into my truck.

Additionally, the deposition transcript of Dr. Apurva R. Dalal, Plaintiff's non-treating physician expert, was entered into the record as an exhibit, over the City's objection.[4]

---

[3] Plaintiff testified that she works approximately twenty-five hours per week at a wage of $10.50 per hour.

[4] The City's counsel objected to the admission of Dr. Dalal's deposition on the basis of Tennessee Rule of Evidence 703.

At the close of Plaintiff's proof, the City made an oral motion for the involuntary dismissal of Plaintiff's claims. A written motion was subsequently filed. In its motion, the City argued that because Plaintiff admitted to crossing the street not at a crosswalk, she was at least 50% at fault. Thus, Plaintiff's injuries would not have occurred but for her own negligent conduct, such that she could not recover.

The trial court denied the City's motion, and Mr. Haynie was called to testify. Mr. Haynie denied stopping to let pedestrians cross the street and he did not recall any other pedestrians crossing in front of his truck prior to Plaintiff. Mr. Haynie further denied being on his cell phone.[5] According to Mr. Haynie, at the time of the accident, he was stopped at a red light, and "[w]hen the light turned green, [he] let [his] foot off the brake and [Plaintiff] stepped into [his] truck." He clarified that "[w]hen the light turned green, [he] looked at [Plaintiff], she was standing on the sidewalk; [he] let [his] foot off the brake, and simultaneously she stepped off the curb."

After the close of the City's proof, the City renewed its motion for involuntary dismissal. The trial court again denied the motion.

The trial court issued its Bench Trial Ruling on January 18, 2023, and the transcript thereof was filed by the City on January 25, 2023. The trial court then entered its findings of fact, conclusions of law, and judgment on February 28, 2023.[6] The trial court explained that it "weighed the testimony of the truck driver, the City employee, to that of [Plaintiff,]" and specifically found that Plaintiff's "sworn testimony was consistent and more probable than not." The trial court concluded that (1) Plaintiff did not walk into the truck, but "was lagging behind the group who were allowed to cross the street"; and (2) Mr. Haynie was "not paying attention to what he was doing as he was on his cellphone at the time that Plaintiff was struck" and "further failed to yield the right of way to Plaintiff" as she crossed the street.

The trial court found that Mr. Haynie had a "duty to plaintiff to pay attention and observe what was to be seen" and also a duty "not to be on his cell phone while operating a motor vehicle[.]" The trial court stated that the City's contention that Plaintiff would not have been struck if she had been in the crosswalk or otherwise not left the sidewalk was a "red herring argument[.]" The trial court further noted that the City "failed to present any evidence that the traffic lights at both ends of the street were working at the time of the accident."

---

[5] Mr. Haynie testified that he was not charged or otherwise cited for using his cellphone.
[6] A copy of the Bench Trial Ruling transcript was attached to the February 2023 order and specifically incorporated by reference. The specific source of a particular aspect of the trial court's ruling is mentioned only when necessary to highlight internal inconsistencies.

The trial court concluded that Mr. Haynie was negligent in failing to maintain a proper lookout, exercise reasonable care and caution, or devote full-time attention to the operation of the vehicle, and negligent per se in violating Tennessee Code Annotated sections 55-8-136 and 55-10-205, as well as multiple Memphis City Ordinances. The trial court further concluded that the City was liable for the negligence of its employee and had separately "committed negligence in the negligent hiring and retention" of Mr. Haynie.[7]

In the Bench Trial Ruling, the trial court found that Mr. Haynie was 90% at fault "by allowing [Plaintiff] and others to cross outside of the crosswalk and eventually hitting [Plaintiff]" and Plaintiff was 10% at fault because "she did not cross at the crosswalk and may have been lagging behind the others who were allowed to cross beyond the crosswalk." However, in the February 2023 order, the trial court found that the City was 90% negligent and Plaintiff was 10% negligent, with no fault allocated to Mr. Haynie individually.

Relying on the deposition testimony of Dr. Dalal, the trial court found that the $22,432.95 in medical bills incurred by Plaintiff was "reasonable and necessary and directly caused by the motor vehicle pedestrian accident[.]" The trial court noted that Plaintiff also sought $525.00 in lost wages for the two weeks of work she missed, and that Plaintiff had requested $67,307.85 in compensatory damages for her pain and suffering in her closing argument.[8] The trial court concluded that Plaintiff was entitled to a total of $106,580.06 in damages "for physical pain and suffering, past, present, and future medical expenses, and loss of earning capacity."[9] This amount was reduced by Plaintiff's 10% fault for a total award of $95,858.56.

The City appealed the trial court's judgment on March 24, 2023. This Court issued its Opinion on May 1, 2024. ***Easley v. City of Memphis***, No. W2023-00437-COA-R3-CV, 2024 WL 1916227 (Tenn. Ct. App. May 1, 2024), *vacated*, 699 S.W.3d 268 (Tenn. 2024)

---

[7] Specifically, in the Bench Trial Ruling, the trial court found that:

> The City was negligent in hiring and its supervisory training to drive. The Court also finds if the City of Memphis knew or exercised due diligence in a reasonable inquiry should have known of [Mr.] Haynie's ability to drive in an illegal, unlawful, negligent and reckless manner.

[8] In his closing argument, Plaintiff's counsel stated that Plaintiff "missed one week of work at $10.25 an hour at 25 hours" per week and took one week off without pay, before requesting $320.00 in lost wages. Counsel's statement was an apparent misstatement, as Plaintiff testified that she earned $10.50 per hour. Then, at one point, counsel requested a pain and suffering damages award of three times the amount of Plaintiff's medical bills, and at another, counsel requested the award be two times Plaintiff's medical bills. Three times Plaintiff's $22,432.95 in medical bills amounts to $67,298.85.

[9] In the Bench Trial Ruling, the trial court stated that Plaintiff was entitled to $53,521.50 "for the medical bills past, present, and future" and $17,662.22 for "[p]hysical pain and suffering, past and future[.]" No further explanation for the amount of the total award was provided in either the Bench Trial Ruling or the February 2023 order.

(per curiam). The Opinion raised three main points: (1) that the allocation of fault in the trial court's final order was inconsistent with the allocation of fault made in the Bench Trial Ruling that was then attached to the final order; (2) that there was no support in the record for the conclusion that the City was independently negligent; and (3) that the evidence preponderated against the trial court's finding that Plaintiff was only 10% at fault. *Id.* Instead, the Court concluded that Plaintiff "did not exercise ordinary care for her own safety," such that she was at least 50% at fault. *Id.* at *6. Accordingly, the Court determined that Plaintiff was barred from recovering, reversed the trial court's judgment, and pretermitted the City's remaining issues. *Id.* at *6–7.

Plaintiff subsequently applied for permission to appeal this Court's ruling to the Tennessee Supreme Court on June 27, 2024. The court issued an order with two main rulings on October 2, 2024.[10] Our high court first concluded that "the Court of Appeals' opinion is inconsistent with the applicable standard of review and fails to give appropriate weight to the Circuit Court's factual findings and credibility determinations." *Easley*, 699 S.W.3d at 270. The court emphasized the trial court's express determination that Plaintiff's description of the accident was credible and Mr. Haynie's claims were not, as well as the lack of evidence in the record to override these findings. *Id.* at 270–71. The court further explained that the question on appeal is "whether the trial court exceeded its 'considerable latitude in allocating percentages of fault to [the] negligent parties[,]'" and remanded the case for the evaluation of "whether the record preponderates against the [trial court's] presumptively correct allocation of fault." *Id.* at 272 (quoting *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995)).

Second, our high court noted that Plaintiff had not appealed this Court's conclusion that the record did not support the trial court's finding that the City negligently hired and failed to train Mr. Haynie. We were directed, on remand, to "consider, as necessary whether the case should be remanded to the [trial court] to re-allocate fault among the parties given the [trial court's] unsupported finding that the City was negligent in hiring and failing to train the truck driver." *Id.* So too were we directed to consider, as necessary, the previously pretermitted issues raised by the City. *Id.*

Thus, the court granted Plaintiff's application, vacated the May 1, 2023 appellate judgment, and remanded the matter to this Court for further consideration.

## II. ISSUES PRESENTED

The City raises the following issues on appeal, taken directly from its brief:

1. Whether the trial court erred in deciding Plaintiff was less than 50 percent at fault.

---

[10] The order was designated for publication pursuant to Tennessee Supreme Court Rule 4.

2. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence.

3. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence and was entitled to a judgment for Appellant's negligent hiring and retention of employee Paul Haynie.

4. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence and was entitled to a judgment for future medical expenses, future mental anguish, "future injuries" and future emotional pain and suffering.

5. Whether the trial court erred in deciding Appellant's employee Paul Haynie failed to yield right of way.

6. Whether the trial court erred in deciding Plaintiff carried her burden of proof by a preponderance of the evidence that Plaintiff was entitled to an award of $106,580.06 for pain and suffering past and future medical expenses.

7. Whether the trial court erred in denying Appellant's Tennessee Rule of Civil Procedure 41.02 Motion for Involuntary Dismissal.

8. Whether the trial court erred in its decision with regard to the admissibility, weight, and credibility it afforded the documentary evidence/deposition transcript of the testimony of Dr. Apurva R. Dalal.

### III. STANDARD OF REVIEW

In cases tried without a jury, the trial court's findings of fact are reviewed de novo, with a presumption of correctness set aside only if the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). This same standard applies to a trial court's allocation of fault. *Cook v. Jefferson Cnty.*, No. E2022-01537-COA-R3-CV, 2023 WL 6638988, at *2 (Tenn. Ct. App. Oct. 12, 2023) (citing *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002)). "In order for the evidence to preponderate against the trial court's finding of fact, the evidence must support another finding of fact with greater convincing effect." *Id.* (quoting *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006)). The trial court's conclusions of law are reviewed de novo without a presumption of correctness. *Id.* (citation omitted).

Generally, "the admissibility, qualifications, relevancy[,] and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993)). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the proof, or utilizes reasoning that causes an injustice to the complaining party." *State v. Lowe*, 552 S.W.3d 842, 865 (Tenn. 2018) (citing *Konvalinka v. Chattanooga-Hamilton Cnty Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

"When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary." *In re Markus E.*, 671 S.W.3d 437, 457 (Tenn. 2023) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, No. W2011-02520-COA-R3-PT, 2012 WL 4340709, at *7 (Tenn. Ct. App. Sept. 24, 2012)); *see also Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) ("[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.").

However, this standard is based on the premise that "trial courts are able to observe witnesses as they testify and to assess their demeanor," and so are better equipped to make credibility determinations. *Wells*, 9 S.W.3d at 783 (citations omitted). Such is not the case when considering "documentary proof, such as depositions or other forms of testimony presented to the trial court in a 'cold' record[.]" *Id.* Because a trial court has no better ability to gauge the credibility of witness providing such proof, an "appellate court[] may make an independent assessment of the credibility of the documentary proof it reviews, without affording deference to the trial court's findings." *Id.* at 783–84 (citing *Elmore v. Travelers Ins. Co.*, 824 S.W.2d 541, 544 (Tenn. 1992); *Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 456 (Tenn. 1988)).

## IV. ANALYSIS

In our view, the City's appellate issues may be consolidated into three main assessments of error against the trial court. The City alleges that the trial court erred in (1) finding proof of negligence; (2) allocating fault; and (3) establishing damages. We will address each category in turn.

## A. Negligence

The City first questions the trial court's finding that Mr. Haynie was negligent, for which it was vicariously liable.[11] The City argues that Plaintiff's admitted failure to use the crosswalk was the direct and proximate cause of her injuries. It asserts that the evidence supporting this theory of causation evenly matched Plaintiff's uncorroborated and disputed testimony that the accident was caused by Mr. Haynie using his cellphone. Thus, it argues, Plaintiff failed to establish her claim by a preponderance of the evidence and no reasonable factfinder could conclude that Plaintiff's own actions were not the proximate cause of her injuries. Based on Plaintiff's failure to present a prima facie case of negligence, the City argues that the trial court's denial of its motion for involuntary dismissal was also in error.

Negligence involves "the failure to exercise reasonable care." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). To establish a claim for common law

---

[11] No argument has been made that the City should not be liable for Mr. Haynie's negligence.

negligence, a plaintiff must establish the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Id.* (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). Negligence per se is not a separate cause of action, but rather "a form of ordinary negligence, that enables the courts to use a penal statute to define a reasonably prudent person's standard of care." *Rains v. Bend of the River*, 124 S.W.3d 580 (Tenn. Ct. App. 2003) (citations omitted).

"While cause in fact establishes that the plaintiffs' injury would not have occurred 'but for' the defendant's conduct, proximate cause focuses on whether the law will extend responsibility for that conduct." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 553 (Tenn. 2005) (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). Proximate cause must be proven by a preponderance of the evidence, which requires that Plaintiff "demonstrate that the negligence *more likely than not* caused the injury." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598–99 (Tenn. 1993) (citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985) ("[p]laintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.")). The proximate cause of a plaintiff's injury is an issue of fact to be determined by the factfinder. *Kim v. State*, 622 S.W.3d 753, 760 (Tenn. Ct. App. 2020) (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 905 (Tenn. 1996)).

Motions for involuntary dismissal under Tennessee Rule of Civil Procedure 41.02(2) "do not raise questions of law but rather challenge the sufficiency of the plaintiff's proof." *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citations omitted). When faced with such a motion, a trial court must "impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence." *Id.* (citing *Thompson v. Adcox*, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001)). This Court "will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case." *Id.* at 521.

Here, the trial court found that Mr. Haynie was on his cellphone at the time of the accident and not paying appropriate attention to his surroundings while operating a vehicle. The trial court found this conduct to be a breach of his duty to maintain a proper lookout, exercise reasonable care and caution, and devote full-time attention during the operation of a vehicle. The trial court further found that Mr. Haynie breached the standard of care set out in Tennessee Code Annotated section 55-8-136, requiring that "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway"; section 55-10-205 and Memphis City Ordinance 11-16-44, both prohibiting reckless driving, defined as driving a vehicle in a "willful or wanton disregard for the safety of

- 9 -

persons or property"; Memphis City Ordinance 11-16-2, requiring a driver to "devote full time and attention to operating such vehicle when such failure, under the then existing circumstances, endangers life, limb or property"; and Memphis City Ordinance 11-16-3, requiring every driver to drive at a safe speed, maintain a safe lookout, and keep the vehicle under control.[12] And although the trial court found that Plaintiff's admitted failure to cross within the crosswalk factored into the ultimate allocation of fault, it concluded that Plaintiff's injuries were caused by Mr. Haynie's negligent actions.[13]

As explained by our high court, the trial court relied heavily on its credibility determinations in finding that Plaintiff successfully established the causation elements of her negligence claim by a preponderance of the evidence. *See Easley*, 699 S.W.3d at 279–71. The trial court specifically explained that it weighed the testimony of both Plaintiff and Mr. Haynie as to their description of the accident and their respective roles therein, and that it found Plaintiff's testimony credible and "more probable than not[.]" The trial court explicitly stated that it did not believe Mr. Haynie's explanation that he was not on his cellphone and Plaintiff simply walked into the truck.

The trial court also did not find any merit to the City's argument that Plaintiff's admitted failure to cross in a crosswalk absolved Mr. Haynie of his negligence. As our supreme court noted, the trial court clearly factored Plaintiff's admitted failure to cross within the crosswalk into its consideration of the responsibility for Plaintiff's injuries. *Id.* at 271. The trial court also included Plaintiff potentially "lagging behind" the other pedestrians in its discussion of the cause of the accident. That Plaintiff was also found to have contributed to the accident does not mean that the trial court could not find Mr. Haynie's actions to be the proximate cause of her injuries; indeed, "[t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (citations omitted). With all of the circumstances in mind, the trial court found that Mr. Haynie's conduct was a substantial factor in the accident and more likely than not caused Plaintiff's injuries.

In sum, the trial court was faced with conflicting testimony regarding the cause of the accident, and resolved the dispute in favor of Plaintiff. Our review of the record does not reveal any evidence that would warrant the reversal of these credibility-based factual findings on appeal. *In re Markus E.*, 671 S.W.3d at 457; *Wells*, 9 S.W.3d at 783. Nor does the evidence preponderate against the trial court's ultimate finding that Mr. Haynie's conduct was more likely than not a substantial factor in causing Plaintiff's injuries by

---

[12] The trial court also found that Mr. Haynie "had a duty not to be on his cell phone while operating a motor vehicle as well, per statute and common law." Although not specifically listed by the trial court, Tennessee Code Annotated section 55-8-199 prohibits the use of a cellphone while driving.

[13] Further discussion of the trial court's allocation of fault occurs, *infra*.

- 10 -

supporting another finding with greater convincing effect. ***Kilpatrick***, 868 S.W.2d at 598–99; ***Cook***, 2023 WL 6638988, at \*2. We therefore affirm the trial court's ruling that Mr. Haynie, and vicariously, the City, were negligent. Because Plaintiff's proof was sufficient to establish her negligence claim, the trial court's denial of the City's motion for involuntary dismissal in relation to that claim is also affirmed.

The trial court also found that the City was directly negligent in its hiring and retention of Mr. Haynie. In our prior Opinion, we determined that the "complete lack of evidence supporting any claim for negligent hiring or retention" required a reversal of the trial court's ruling in Plaintiff's favor on that issue. ***Easley***, 2024 WL 1916227, at \*5. And, as noted by our high court, Plaintiff did not challenge that aspect of this Court's ruling in her application for permission to appeal to that court. ***Easley***, 699 S.W.3d at 272. Generally, an issue not raised on appeal is waived. Tenn. R. App. P. 13(b); *see also* Tenn. R. App. P. 1 (specifying that the Rules govern procedure in proceedings before the Tennessee Supreme Court). As such, we conclude that Plaintiff has waived any argument regarding further consideration of the merits of the trial court's unsupported finding of direct negligence by the City, and that aspect of the trial court's judgment is reversed. This conclusion also requires the reversal of the trial court's denial of the City's Rule 41.02 motion in relation to this claim.

### B. Allocation of Fault

The City also disputes the trial court's finding that Plaintiff was only 10% at fault. In connection with this argument, the City asserts that "[t]he preponderance of the evidence supports a wors[t] case finding that [Plaintiff] is guilty of 100% fault and a best case finding that if there [is] an equivalence of the parties' respective duties the fault is equal, 50% each, entitling [the City] to Judgment in its favor either way."

Under Tennessee's system of modified comparative fault, "a plaintiff may only recover damages if the 'plaintiff's negligence remains less than the defendant's negligence.'" ***Cook***, 2023 WL 6638988, at \*5 (quoting ***McIntyre v. Balentine***, 833 S.W.2d 52, 57 (Tenn. 1992)). Trial courts have a "responsibility to apportion fault to anyone having a degree of culpability." ***Lindgren***, 88 S.W.3d at 585 (citations omitted); *see also* ***Hixson v. Am. Towers, LLC***, 593 S.W.3d 699, 717 (Tenn. Ct. App. 2019) ("Importantly, the trier of fact may allocate fault 'to *all* persons involved in an injury-causing event[,]' including non-parties." (quoting ***Carroll v. Whitney***, 29 S.W.3d 14, 21 (Tenn. 2000))). "[T]he comparison and allocation of fault is a question of fact to be decided by the finder-of-fact[.]" ***Henley v. Amacher***, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at \*6 (Tenn. Ct. App. Jan. 28, 2002) (citations omitted). Accordingly, "[a] trial court has considerable latitude in allocating fault between or among culpable parties, and the appellate court reviews same with a presumption of correctness." ***Lindgren***, 88 S.W.3d at 585 (citation omitted).

The City emphasizes that, despite the trial court finding that Mr. Haynie failed to yield the right of way to Plaintiff, Plaintiff did not have the right of way based on her failure to cross within the crosswalk. The City argues that crossing outside of the crosswalk constituted negligence per se, which should have rendered Plaintiff at least 50% at fault, and thus, unable to recover. These arguments were addressed by our supreme court as follows:

> [A] plaintiff's negligence—even negligence per se—is not an automatic bar to recovery under Tennessee's comparative-fault system. . . . In fact, drivers are statutorily required to use due care to watch for and avoid hitting all pedestrians, including pedestrians crossing outside of a crosswalk. *See* Tenn. Code Ann. § 55-8-136(b) (providing that drivers have a duty to "maintain[] a safe lookout" and "avoid colliding with any other vehicle or person" "[n]otwithstanding any . . . right-of-way rules that may be applicable"); *see also **Seahorn v. Karr***, 35 Tenn. App. 38, 242 S.W.2d 331, 334 (1951) (explaining that "a pedestrian who undertakes to cross a street or highway at any point other than a [crosswalk] must yield the right of way to vehicles" but "[t]his does not mean . . . that the driver of a vehicle is relieved of the duty of maintaining a reasonable lookout for pedestrians between intersections").

*Easley*, 699 S.W.3d at 271; *see also **Norman v. Prather***, 971 S.W.2d 398, 401 (Tenn. Ct. App. 1997) ("We believe the provisions of the statutes in question [including section 55-8-136] are clear and unambiguous in stating that notwithstanding the various rights and duties placed upon drivers and pedestrians by the 'rules of the road,' and notwithstanding that pedestrians not in crosswalks must yield the right-of-way to vehicles upon the roadway, drivers of vehicles on the roadway do not have a license to run over pedestrians who are not following the rules."). Thus, while perhaps inaccurate to say that Plaintiff had the right of way, the trial court correctly noted that Mr. Haynie was nevertheless obligated to yield to her crossing the street outside of the crosswalk and Plaintiff's failure to use the crosswalk was not fatal to her right to relief. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

Our high court also noted, however, that the reversal of the negligent hiring and retention claim may require an adjustment of the trial court's allocation of fault. *Easley*, 699 S.W.3d at 271. We conclude that it does.

By very definition, the sum of the percentages of respective fault apportioned between persons found culpable for a plaintiff's injury must total 100%. *See percent*, *Black's Law Dictionary* (12th ed. 2024) (defined as "[o]f each hundred"). As such, "fault allocation is a relative and comparative process: if a party's negligence is taken out of the

- 12 -

equation, the other parties necessarily have to fill in the vacuum that is left by the absent party." J.J. Burns, Note, *Respondeat Superior As an Affirmative Defense: How Employers Immunize Themselves from Direct Negligence Claims*, 109 Mich. L. Rev. 657, 671 (2011).

Here, the trial court allocated 10% of the fault to Plaintiff. The remaining 90% of the fault was allocated to the City, based on the trial court's determination that the City was both vicariously *and* directly negligent. In other words, although a single entity, the City was assigned two shares of fault: the fault attributable to Mr. Haynie's actions, for which it was held responsible, and the fault attributable to its own actions in hiring and retaining Mr. Haynie.[14] With the conclusion that the City was not directly negligent, this second share of fault must be taken out of the equation. When allocating fault between only Mr. Haynie's actions and Plaintiff's actions, the trial court might find it necessary to alter its initial distribution.[15] *See **Binns v. Trader Joe's E., Inc.***, 690 S.W.3d 241, 252 (Tenn. 2024) (noting, in discussing the interplay between the preemption rule and the respondeat superior doctrine, that "it is more than conceivable that eliminating the employer's alleged direct negligence from the jury's consideration may result in a plaintiff or additional defendant being allocated a greater percentage of fault").

Accordingly, we vacate the trial court's allocation of fault. On remand, and without hearing further proof, the trial court should consider only the City's vicarious liability for Mr. Haynie's actions in determining the distribution of fault between the parties.

## C. Damages

Finally, the City questions both the amount of damages awarded to Plaintiff and the categories of those damages. The City also takes issue with the trial court's reliance on the deposition testimony of Dr. Dalal in finding that Plaintiff's medical expenses were reasonable and necessary.

"The goal of awarding damages is to repair the wronged party's injury or, at least, to make the wronged party whole as nearly as may be done by an award of money." ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (citations omitted). The party seeking damages has the burden of proving them, though the proof need not be mathematically precise. *Id.* (citations omitted) Instead, the "proof must be as certain as the nature of the case permits and must enable the trier of fact to make a fair and reasonable assessment of the damages." *Id.* The amount of damages is a question of fact. ***Memphis Light, Gas & Water Div. v. Starkey***, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007). We

---

[14] We note that the trial court attributed 90% of the fault to Mr. Haynie in its Bench Trial Ruling and 90% to the City in its judgment, without explicitly stating the percentage of fault attributable to the respective actors. While perhaps the better practice would have been to clearly delineate its apportionment of fault between individual tortfeasors, at the time of the trial court's ruling, the City properly bore both shares of fault whatever the exact split might have been.

[15] We offer no opinion on whether such an adjustment would be appropriate.

- 13 -

presume the amount awarded was correct unless the evidence preponderates against it. ***Id.***

In her complaint, Plaintiff requested a judgment of $350,000.00 for "personal injuries, pain and suffering, loss of enjoyment of life, loss of earnings and earning capacity, medical expenses, workers compensation liens, fees, and expenses[.]" According to the trial court, Plaintiff requested $22,432.95 in past medical bills, $525.00 in lost wages, and $67,307.85 in pain and suffering at trial.[16] These amounts total $90,265.80.

In its Bench Trial Ruling, the trial court explained that the amount of judgment included $53,521.50 "for the medical bills, past, present, and future," and $17,662.22 in "[p]hysical pain and suffering, past and future[.]" These amounts total $71,183.72.

Ultimately, however, the trial court concluded that Plaintiff was entitled to $106,508.56 in damages. In its judgment, which incorporated the Bench Trial Ruling, the trial court explained that the award comprised "physical pain and suffering, past, present and future medical expenses, and loss of earning capacity."

The obvious inconsistency within these rulings render us unable to effectively review whether the preponderance of the evidence supports the trial court's award. "While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" ***Gooding v. Gooding***, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting ***In re Est. of Oakley***, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *11 (Tenn. Ct. App. Feb. 10, 2015)). Here, not only are we unsure of the exact amount the trial court assigned to each category of damages, the categories themselves change as well.

Additionally, "[u]nder Tennessee's system of modified comparative fault, the trier of fact 'should first determine the total amount of the plaintiff's damages without regard to fault, and then apportion damages on the percentage of fault attributable to each tortfeasor.'" ***Lindgren***, 88 S.W.3d at 585 (citing ***Grandstaff***, 36 S.W.3d 482). While the potential change in the allocation of fault contemplated, *supra*, will not necessarily have any effect on the total amount of damages, in light of the fact that the trial court must re-evaluate at least one aspect of this case, it does not appear prudent to solider on to consider these issues despite the order's inconsistencies. We therefore conclude that the best course of action is to vacate the award of damages and remand the matter back to the trial court for the entry of more specific findings, both in light of the evidence produced at trial and the reversal of the negligent hiring and retaining claim.

---

[16] Again, in his closing argument Plaintiff's counsel requested $325.00 in lost wages and a pain and suffering award of three times Plaintiff's medical bills, which amounts to $67,298.85. Nevertheless, we use the amount stated by the trial court in our calculations.

- 14 -

While full substantive review of the trial court's award is currently untenable, we note that some of the categories mentioned in the trial court's various descriptions of the award had not been discussed in a significant capacity since Plaintiff's complaint. Indeed, it does not appear that any proof was offered regarding present or future medical bills, future pain and suffering, or loss of earning capacity. On remand, the trial court should be mindful to award only those damages for which reasonably certain proof was presented. *See **Overstreet***, 4 S.W.3d at 703.

One final issue remains: the trial court's treatment of Dr. Dalal's deposition testimony regarding Plaintiff's medical treatment and bills. "The law requires a plaintiff seeking to recover damages resulting from a personal injury to present competent expert testimony (1) to prove medical expenses were necessary and reasonable and (2) to establish that a plaintiff's physical injury was in fact caused by the incident at issue." ***Al-Athari v. Gamboa***, No. M2013-00795-COA-R3-CV, 2013 WL 6908937, at *3 (Tenn. Ct. App. Dec. 30, 2013) (citations omitted). Generally, "the admissibility, qualifications, relevancy[,] and competency of expert testimony are left to the discretion of the trial court." ***McDaniel***, 955 S.W.2d at 263; *see also **Thurmon v. Sellers***, 62 S.W.3d 145, 162 (Tenn. Ct. App. 2001) (noting that "expert testimony is not conclusive, even if uncontradicted, but is merely purely advisory in character, and the trier of fact may place whatever weight it chooses on such testimony"). So too is the credibility afforded to witness testimony by the trial court afforded significant deference. ***Wells***, 9 S.W.3d at 783. However, the credibility assigned to witnesses who do not testify before the trial court and whose testimony is instead introduced through documentary proof is reviewed without such deference. ***Id.***

Here, Plaintiff presented the deposition testimony of Dr. Dalal as proof that her medical expenses were reasonable, necessary, and caused by the accident. The City argues that the trial court abused its discretion in admitting this testimony because the opinion was untrustworthy. The City highlights that Dr. Dalal did not physically meet Plaintiff prior to offering his opinion, mistakenly stated that Plaintiff was seated on the sidewalk at the time of the accident, and had been paid by Plaintiff's counsel to testify in this case and in other cases over a multi-year period. Alternatively, the City argues that we should conduct our own review of the testimony and afford it less weight based on these same factors.

From our review of Dr. Dalal's deposition, we do not find that the trial court abused its discretion in admitting his testimony. Dr. Dalal testified that he was a Board-certified orthopedic surgeon, licensed in Tennessee and two other states. Dr. Dalal further testified that he had previously worked in a hospital's emergency department and had familiarity with medical record review, billing codes, the reasonable and necessary treatment for injuries such as those sustained by Plaintiff, and the customary charges for medical treatment in Shelby County, Tennessee. Dr. Dalal's testimony was offered based on a reasonable degree of medical certainty. The admission of this testimony did not result from an erroneous assessment of the proof or reach an illogical conclusion, and as such, the trial

court was within its discretion to admit Dr. Dalal's testimony on the issue of damages. ***Lowe***, 552 S.W.3d at 865.

Nor do we find that the trial court improperly credited Dr. Dalal's testimony. Deposition testimony does not need to be "read and evaluated in a vacuum." ***Thomas v. Aetna Life & Cas. Co.***, 812 S.W.2d 278, 283 (Tenn. 1991). While the reasonableness, necessity, and causation of medical treatment must be established by expert testimony, "such testimony must be considered in conjunction with the lay testimony of the [plaintiff] as to how the injury occurred and the [plaintiff's] subsequent condition." ***Id.*** (citing ***Smith v. Empire Pencil Co.***, 781 S.W.2d 833, 835 (Tenn. 1989)). And again, "considerable deference must be given to the trial court's evaluation of such oral testimony." ***Id.*** Dr. Dalal's deposition testimony regarding the medical treatment and billing aligned with Plaintiff's oral testimony regarding the nature of the accident, which the trial court expressly credited. Moreover, while the City points to various issues that it asserts undermine Dr. Dalal's conclusions, including his alleged financial bias in favor of Plaintiff's attorneys, the City produced no countervailing expert proof demonstrating that Plaintiff's medical bills were not reasonable and necessary under the circumstances of this case. Given Plaintiff's testimony, our independent review of Dr. Dalal's deposition, and the record as a whole, we cannot conclude that the trial court erred in relying on Dr. Dalal's conclusion that Plaintiff's medical expenses were reasonable and necessary.

## V. CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed in part, reversed in part, and vacated in part, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant the City of Memphis, and one-half to Appellee Sandra Easley, for all of which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE